GEORGE A. BRACKETT

*vs.*

ERASTUS S. EDGERTON.

Separate written instruments, made at the same time, and with reference to the same transaction, are to be read together, and construed as parts of the same contract.

If special damage is not particularly set up, it cannot be recovered, and in an action for the breach of a contract, as a general rule, such damages only are recoverable as are the natural or proximate consequences of the breach.

What are *general,* and what *special* damages, and under what circumstances either may be recovered, considered.

A demand made on Sunday for the delivery of wheat, under a contract, is a nullity, and a compliance with it would be a violation of law ; such demand cannot be validated, nor its illegality or insufficiency waived, by the person of whom it is made.

The defendant agreed to deliver to the plaintiff a certain number of bushels of wheat at Ottawa, in sacks to be furnished by the plaintiff. *Held:*—That evidence showing that all the plaintiff's sacks were received at Minneapolis *full,* and the number of bushels so received, was competent as tending to show the quantity delivered at Ottawa, (there being no evidence that any wheat was delivered except in the plaintiff's sacks.)

The plaintiff was a competent witness to prove his knowledge of the market value of wheat at a given time and place.

A person here who is purchasing wheat with reference to an eastern market, and who is buying and selling in such market, and is kept informed as to the prices by circulars and correspondence, has sufficient knowledge to qualify him as to the value of wheat in that market.

The parties to a contract for the sale of wheat having agreed upon a person to inspect and grade it, and that if upon inspection by the person designated any of the wheat should prove to be inferior to No 1 the seller should pay the difference in value, and it being left with the purchaser to call on the inspector if he considered any wheat of an inferior

grade—*Held:*—That the purchaser is only entitled to damages on account of the inferior quality of the wheat which he had inspected according to the contract.

In an action for a failure to deliver wheat according to a contract, the plaintiff is not entitled to interest from the date of the contract, but from the time of its breach.

This action was brought in the District Court for Hennepin county, to recover damages for an alleged breach of a certain written contract, which is set out at length in the opinion of the Court. Issue was joined, and the cause tried before a referee. During the progress of the trial exceptions were taken to the rulings of the referee, in regard to the reception of testimony, which appear in the opinion of the Court. The facts, as found by the referee, and his conclusions of law, are as follows :

" That the said plaintiff and defendant, at St. Paul, in the State of Minnesota, on the 20th day of April, 1865, did execute and deliver the contract for the sale and purchase of wheat set out in the complaint in this action, and the plaintiff then and there paid the defendant for said wheat the said contract price.

That on the 20th day of April, 1865, at said St. Paul, and at the same time of the execution of and delivery of said contract, the defendant executed and delivered to the plaintiff two several orders for the delivery of the wheat sold and purchased by said contract. (These orders appear in the opinion.)

At the same time and place said defendant delivered to plaintiff warehouse receipts for the amount of wheat sold by said contract, issued by warehousemen at Ottawa, the place named in said contract. That the plaintiff shortly afterwards turned over the warehouse receipts and above orders to one J. J. Hill, at St. Paul, aforesaid, a forwarding agent,

with instructions to transport the wheat so purchased, from Ottawa to Minneapolis, in the State of Minnesota; said Hill immediately after, and on the 21st day of April, 1865, forwarded to said Hazzard, at Ottawa, 816 sacks with strings, and ordered the wheat shipped, and also instructed Hazzard to furnish Dane sufficient sacks to ship the 300 bushels of wheat which was warehoused with him, which said sacks were so furnished.

That Ottawa is situated upon the Minnesota river, but neither of the warehouses of Hazzard or Dane are upon the river or landing at said Ottawa, but some distance therefrom. That in order to deliver said wheat at or to a boat on said river, it was necessary to draw the same from said warehouses to the levee or landing. That the arrival of boats at said Ottawa was during the year 1865 very irregular, and that the boats would not wait for wheat to be hauled to the landing after their arrival, but in order to ship it by such boats it had to be ready for them on the levee at the time of their arrival. The plaintiff furnished sacks for said wheat at said Ottawa in sufficient quantities, and as rapidly as said wheat could be shipped by the ordinary modes of transportation on the Minnesota River. That said wheat was delivered at and to the boat at said Ottawa as rapidly as opportunities offered, up to the early part of June, 1865, and up to that time three thousand nine hundred and sixty-two bushels and fifty-seven pounds were so delivered and shipped. That in the early part of June, 1865, 330 or 340 sacks of said wheat were hauled to the levee at said Ottawa by said defendant's agents and piled there; that said sacks so piled on said levee contained about $2\frac{1}{3}$ bushels of wheat each; that they were not covered or protected from the weather; that they remained so exposed on said levee for several weeks and became wet by severe rain storms. That

no opportunities offered for delivering said wheat at or to any boat during all the time it so remained on said levee. That the plaintiff saw said wheat so exposed on said levee and directed the agents of the defendant to remove the same to the warehouse, telling such agent that he would pay the expenses of such removal, and charge the same to the defendant. That said agent did remove the same, and incurred an expense in such removal of $13.80, which was paid by the plaintiff.

The said wheat became wet while on said levee, and about one-fifth of the sacks became rotten and the wheat therein sprouted, and many of such rotten sacks burst when lifted.

That all of the three thousand nine hundred and sixty-two bushels and fifty-seven pounds of wheat so delivered at and to the boats aforesaid, was No. 1 wheat, in accordance with the said contract, and was not inspected by any one, but was received by the plaintiff without inspection.

That in the early part of July or the latter part of June, 1865, further shipments were made of said wheat to the amount of four hundred and thirty bushels and fifty-one pounds from Ottawa and received by plaintiff at Minneapolis. That the plaintiff and defendant in the month of July, finding that B. Beaupre, the inspector named in the said contract, could not inspect said wheat, agreed that the same should be inspected by Anthony Kelly, and that Anthony Kelly did in said month of July, 1865, inspect the same, and the result of such inspection was as follows :

Two hundred and eighty-two bushels and twenty-two pounds No. 1.

One hundred and twenty-five bushels and thirty-seven pounds No. 2.

Twenty seven bushels and twenty-seven pounds reject-
ed, and four bushels and thirty pounds stumptail.

That in the month of July, 1865, and after the last
named shipment of wheat had been made as aforesaid, the
plaintiff sent a barge to Ottawa for the transportation of the
balance of said wheat; that said barge arrived at said Ot-
tawa on Sunday, near the middle of July, 1865, and the
captain demanded the wheat of the warehouseman, but it
was not, nor was any part of it, delivered at or to said
barge, because the said wheat was held by the County
Treasurer of Le Sueur county for a tax. That was the rea-
son assigned by the warehouseman for the non-delivery.

That freights on the river at that time were forty cents
per sack, or 17 13-100 cents per bushel from Ottawa to St.
Paul, and immediately after that time increased to sixty
cents per sack. That there was a balance of four hundred
and forty-eight bushels and eighty pounds of said wheat
then undelivered at said Ottawa on said contract. That the
reasonable value and expense of sending said barge for said
wheat, was the sum of one hundred and forty dollars and
sixty-five cents, the sum or amount of freight at sixty cents
per sack on the balance of said wheat due on said contract.
That no freight was offered to said barge at Ottawa, and
none could with reasonable diligence have been procured,
and that said barge returned without freight. That after-
wards, and about the 10th of August, 1865, a further
amount of two hundred and ninety bushels and twenty
pounds of said wheat was delivered at said Ottawa at a boat
and shipped and received by the plaintiff. That the plain-
tiff was compelled to pay and did pay on said wheat the
sum of sixty cents per sack of 2⅓ bushels freight, which is
twenty cents more than he would have had to pay had it
been delivered when the barge was sent for it as aforesaid,

Brackett v. Edgerton.

being the sum of twenty-four dollars and eighty-five cents. That no other wheat was ever delivered on said contract. That said two hundred and ninety bushels and twenty pounds of wheat was part and parcel of said wheat that had been exposed on the levee at Ottawa as aforesaid, and was in quality No. 2 wheat when delivered at Ottawa. That the same was never inspected by either Kelly or said Beaupre. That the said defendant had no other wheat at said Ottawa in the year 1865 with which to fill the said contract than the amount so delivered as aforesaid, and did not procure any other wheat at that place. That plaintiff did demand of said defendant before the commencement of this action that he deliver to him the balance of said wheat on said contract so undelivered as aforesaid.

That the difference in value between No. 1 wheat and No. 2 wheat was, on the 14th day of April, 1865, at Milwaukee, in Wisconsin, the sum of twenty cents per bushel. That the difference between No. 1 wheat and rejected wheat was at the time and place last aforesaid the sum of forty cents per bushel. That the difference between No. 1 wheat and stumptail wheat was at the time and place last aforesaid the sum of fifty cents per bushel. That the value of No. 1 wheat at Ottawa aforesaid at the time the plaintiff was entitled to the delivery of said wheat at said place, was the sum of one dollar and twenty cents per bushel.    *    *    *    *

As conclusions of law from the above facts, I find as follows : That the said defendant did break and violate said contract, in this, that he did not deliver to said plaintiff the amount of five thousand and fifty bushels of No. 1 wheat at or to the boat at Ottawa, as by the terms of said contract he was bound to do, but did only deliver the amount of four thousand two hundred and forty-five bushels and nineteen pounds of No. 1 wheat at boat at said Ottawa, and four

hundred and fifteen bushels and fifty-seven pounds of No. 2 wheat, and twenty-seven bushels and twenty-seven pounds of rejected wheat, and four bushels and thirty pounds of stumptail wheat, at said place last above named.

That the said defendant is indebted to the said plaintiff for the deficiency of three hundred and fifty-six bushels and forty-seven pounds of said No. 1 wheat not delivered under said contract at the value of $1.20 per bushel, the sum of four hundred and twenty-eight dollars and fourteen cents, with interest from the 20th day of April, 1865.

That the said defendant is indebted to the said plaintiff in the sum of eighty-three dollars and nineteen cents, with interest from the 20th day of April, 1865, being the difference between the value of four hundred and fifteen bushels and fifty-seven pounds of No. 2 wheat and that amount of No. 1 wheat, which the plaintiff had a right to receive under the said contract.

That the said defendant is indebted to the said plaintiff in the sum of ten dollars and ninety-eight cents with interest from April 20th, 1865, that sum being the difference in value between seventy-seven bushels and twenty-seven pounds of rejected wheat delivered to plaintiff and that amount of No. 1 wheat which the plaintiff was entitled to receive under said contract.

That the said defendant is indebted to the said plaintiff in the sum of two dollars and twenty-five cents, with interest from the 20th of April, 1865, that sum being the difference between the value of four bushels and thirty pounds of stumptail wheat delivered to said plaintiff under said contract and that amount of No. 1 wheat which the said plaintiff was entitled to receive under said contract.

That said defendant is not indebted to said plaintiff for the sum of thirteen dollars and eighty cents paid, laid out

and expended for said defendant by said plaintiff in the removal of said wheat from the levee at Ottawa, to the ware-house, in the month of July, 1865, no legal obligation arising from said payment.

That said defendant is indebted to the plaintiff in the sum of one hundred and forty dollars and sixty-five cents, with interest from July 15th, 1865, that being the reasonable expense of sending said barge to Ottawa for the wheat which was not then delivered, that mode of freighting being extraordinary and more expensive than the usual freighting by regular boats, but justifiable under the circumstances of the case.

That said defendant is indebted to the said plaintiff in the sum of twenty-four dollars and eighty-five cents, with interest from the 10th day of August, 1865, for extra freight paid by him on the last shipment of two hundred and ninety bushels and twenty pounds of wheat at the rate of twenty cents per sack of 2⅓ bushels, he being delayed by the act of the defendant in the non-delivery of the same until freight had risen twenty cents per sack."

The referee directed judgment to be entered for the plaintiff. Judgment was entered, and the defendant appeals therefrom to this Court.

Gaston & Lewis for Appellants.

I.—The delivery of said receipts and orders constituted, in law, a delivery by defendant to plaintiff of said wheat, and vested the title in him. *Martin vs. Hurlburt et al.*, 9 *Minn.*, 142; 2 *Kent* 501, (*Ninth Ed.*, 683.) ; *Hollingsworth vs. Napier*, 3 *Caine's Rep.*, 182; *Lansing et al. vs. Turner et al.*, 2 *Johns*, 12; *Wilkes et al. v. Ferris*, 5 *Johns*, 335;

*Carter vs. Willard,* 19 *Pick.,* 8 ; *Terryvs. Wheeler,* 25 *N. Y.,* (*Court of Appeals*), 523.

II.—\*　　\*　　\*　　\*　　\*　　\*　　\*

III.—Therefore, if it be granted or found that defendant was bound to deliver said wheat to the boat at Ottawa, the referee erred in finding damages against defendant for the non-delivery of any of said wheat, as he does not find, nor does it appear that the whole amount of said wheat was not so delivered to the boat. As it does not appear that said 330 or 340 sacks delivered upon the levee were not properly or duly delivered ; and it further appears that they were removed therefrom and stored by said warehouse-man at the instance and special instructions of plaintiff himself, in which case plaintiff must be charged as having received the same, and defendant cannot be held responsible for re-delivery of said wheat. It can make no difference if said instructions were given by plaintiff to defendant's agent. In that matter he was not acting for defendant, but for plaintiff and under his instructions.

IV.—When a party is entitled to property under an ordinary sale, a demand for the property made on the seller *on Sunday,* is not a good and sufficient demand. The referee erred in his finding that defendant is indebted to plaintiff $140.65, with interest from July 15, 1865, expense of sending said barge to Ottawa.

First—Because the expense of sending said barge is too remote a cause of damage. *Sedgwick on Damages* (3d *Ed.*), 274, 299 ; 260 *and* 275, *marginal.*

Second—Because it does not appear that plaintiff was at any expense to have said barge go to said Ottawa, or that he was in any way damaged thereby.

V.—When a party contracts to sell and deliver, at a specified place, to another, a certain quantity of wheat and al-

lowance is made in the contract by the seller to the purchaser for loss or wastage in transporting such wheat from the said place of delivery; in a suit brought by purchaser against seller for breach of contract for not delivering the quantity called for in the contract, it is not competent evidence for the purchaser, for the purpose of establishing, or tending to establish, the quantity delivered at the place of delivery by the seller, to show how much was received by the purchaser (after the transportation of said wheat by third parties,) without showing whether any, or how much of said wheat was lost, or wasted, by such transportation; nor for the purpose of contradicting, or tending to contradict proof of the seller of the quantity actually delivered by the seller at the place of delivery specified in the contract.

Therefore the referee erred in admitting the evidence of witness Brackett, as to amount of wheat received at Minneapolis, and also in his finding that there was a deficiency of 356 47-60 bushels of said wheat, not delivered.

VI.—The referee erred in admitting the testimony of witness Brackett, as to the market value of wheat at Ottawa; the referee also erred in his findings as to such value.

VII.—The referee erred in admitting the testimony of Brackett, as to the difference of market value between No. 1 and No. 2 wheat at Milwaukee, in April, 1865, and also in his findings of fact and of law.

VIII—Where a party contracts with another to sell and deliver to him a certain quantity of No. 1 wheat, and the parties to the contract agree upon a certain person to inspect and determine the quality of the wheat, then so much as the purchaser takes or receives of it, without having it so inspected and determined by the person agreed upon, he must take as No. 1, unless he shall show some good reason why it was not inspected by the person so agreed upon.

Referee therefore erred in charging defendant with 415 bushels and 47 lbs. of No. 2 wheat, while he finds that only 125 bushels and 37 lbs. was found to be No. 2 by the mode of inspection agreed upon by the parties.

IX.—Referee erred in charging defendant interest from April 20, 1865, on the value of the wheat, which he finds was not delivered ; while he does not find that there was any refusal to deliver said wheat on demand before July 15, 1865.

X.—Referee erred in charging defendant for extra freight for non-delivery of said wheat, while he does not find that any demand for delivery of it was made, except on Sunday. Because damage for extra freight paid is too remote.

CORNELL & BRADLEY, for Respondent.

I.—The contract alleged in the complaint, which was admitted on the trial, was an executory contract on the part of the defendant for the sale and delivery of 5,050 bushels of No. 1 wheat at a boat at Ottawa, and not an executed sale and transfer of a certain specific and ascertained quantity of wheat. The referee so finds. The written memorandum and the orders were made and delivered at the same time and must be construed together in determining what the contract was. The delivery of the warehouse receipts was not a fulfilment of the contract, and the parties thereto never so treated it. 9 *Minn.*, 142.

II.—In regard to defendant's third point, the referee expressly finds as a fact that the whole amount of said wheat was not delivered at the boat. That the 330 or 340 sacks hauled to the levee were not then delivered to plaintiff, or to or at any boat, but were afterwards shipped and received by plaintiff. The findings of a referee are final.

Brackett v. Edgerton.

III.—In regard to appellant's fourth point, the question of the validity of a demand on Sunday is not involved. The warehouseman, by declining to deliver on the ground that the County Treasurer held the wheat for a tax, waived all other grounds, and excused the making any other demand if same was necessary.

(1.) Under the contract the plaintiff had the right to send the barge for the balance of the wheat, and it was the duty of defendant to furnish the wheat. His neglect to do so occasioned the loss of the trip for which plaintiff should be compensated. The referee's finding in that regard is correct.

IV.—There was no error in the rulings of the referee admitting the testimony of Winslow M. Brackett and the books in regard to the quantity of wheat received at Minneapolis, especially as evidence was given upon the question as to whether any or how much was lost or wasted in the transportation. The evidence was sufficient to support the finding that there was a deficiency of 356 47-60 bushels of wheat not delivered. Plaintiff swears that he failed to receive 373 43-60 bushels.

V.—The evidence shows that the wheat was bought with reference to the Milwaukee market. That the market value of wheat in this State was regulated and governed by the market price in Milwaukee, and that there was no particular market value at Ottawa. Plaintiff was familiar with the Milwaukee market and constantly dealing and buying in this State with reference to that market. His testimony on this point was not only competent but the best evidence, and the referee did not err in receiving it, nor in his finding as to the value of the different grades of wheat both at Ottawa and Milwaukee. His actual residence in either of

those places was not necessary to give him the requisite knowledge to testify on that subject.

VI.—The referee finds that of the wheat delivered 415 bushels and 57 pounds were No. 2 wheat.   Of this 125 37-60 bushels were inspected by P. Kelly, the balance, 290 20–60 bushels, were not inspected by either Kelly or Beaupre, the persons agreed on as inspectors.   Appellant claims (*point* 8) that although this latter quantity was in fact, as found by the referee, No. 2 wheat, yet plaintiff was bound to receive it as No. 1, because it was not inspected by the agreed inspector.

This objection comes too late.   Evidence was offered and received on this point by both parties without any objection. This was a waiver of the objection and defendant cannot now make it after having litigated it on the trial.   It was the duty of the referee to give the evidence its full weight.

But the position itself, if taken in the proper time, is untenable.

VII.—The allowance of interest on the value of the wheat not delivered from April 20, 1865, was correct.   The defendant did not then have the wheat and never had. *Sedg. on Dam.*, 4*th Ed.*, 301-2, *and cases cited.*

VIII.—The charge for extra freight was correct.   ·


*By the Court*—WILSON, Ch. J.—The plaintiff and defendant, on the 20th day of April, 1865, entered into a written contract in these words :

"ST. PAUL, April 14th, 1865.

" George A. Brackett, of Minneapolis, Minn., bought of E. S. Edgerton, of St. Paul, five thousand and fifty bushels of No. 1 wheat, at the market value of such wheat this day in the city of Milwaukee, to wit: at $1.15 per bushel,

Brackett v. Edgerton.

amounting to the sum of $5807.50, out of which sum said Edgerton is to allow said Brackett 42½ cents per bushel for freight and wastage in transporting said wheat from Ottawa, LeSueur county, Minn., to said Milwaukee, Wisconsin, and also to refund to said Brackett the amount of the government tax on the shipping of said wheat. Said Edgerton guarantees said wheat to be all No. 1 wheat, and to be inspected by B. Beaupre, of St. Paul, Minn.; and if any of said wheat upon inspection by said Beaupre should prove not to be No. 1, said Brackett is to take it notwithstanding, but said Edgerton is to refund to said Brackett the difference between the market value of such wheat and No. 1 wheat at said Milwaukee on said 14th day of April, 1865.

Calculation on the above :

| | | |
|---|---|---|
| 5050 bush. wheat @ $1.15 | $5807 | 50 |
| Freight &c. on same | 2146 | 25 |
| | 3661 | 25 |
| Gov't tax on shipping | 50 | 50 |
| | $3610 | 65 |

Said wheat to be received by said Brackett at Ottawa, Le Sueur county, Minn.

{ U. S. Rev. Stamp,    Erastus S. Edgerton,    [seal.]
{       5 cents.        George A. Brackett.

Witness : W. B. Bell. ''

The referee who tried the case has reported as the facts : "That the said plaintiff and defendant at St. Paul, in the State of Minnesota, on the 20th day of April, 1865, did execute and deliver the contract for the sale and purchase of wheat set out in the complaint in this action, and the plaintiff then and there paid the defendant for said wheat the said contract price.

That on the 20th day of April, 1865, at said St. Paul, and at the same time of the execution of and delivery of said contract, the defendant executed and delivered to the plaintiff two several orders for the delivery of the wheat sold and purchased by said contract, in the words and figures following, to wit:

'N. & C. A. Dane will please deliver to Geo. A. Brackett or order, the amount of three hundred (300) bushels No. 1 wheat, to be delivered at boat at Ottawa, in sacks, free of charge, said Brackett furnishing sacks.

E. S. EDGERTON.'

'St. Paul, April 20th, 1865.'

'Messrs. Wm. S. Hazzard & Son will please deliver to Geo. A. Brackett or order, the amount of four thousand seven hundred and fifty (4750) bushels No. 1 wheat, said wheat to be sacked and delivered to boat at Ottawa, Minn., free of charge, said Brackett to furnish sacks.

E. S. EDGERTON.'

'St. Paul, April 20th, 1865.'"

He has found as conclusions of law: " That the said defendant did break and violate said contract, in this, that he did not deliver to said plaintiff the amount of five thousand and fifty bushels of No. 1 wheat at or to the boat at Ottawa, as by the terms of said contract he was bound to do, but did only deliver the amount of four thousand two hundred and forty-five bushels and nineteen pounds of No. 1 wheat at boat at said Ottawa, and four hundred and fifteen bushels and fifty-seven pounds of No. 2 wheat, and twenty-seven bushels and twenty-seven pounds of rejected wheat, and four bushels and thirty pounds of stumptail wheat, at said place last above named. "

The contract first above set out, and the orders for the wheat set out in the report of the referee, being part of the

same transaction, are to be read together, and they clearly show that the agreement was that the defendant should deliver the wheat in sacks free of charge, to or at the boat at Ottawa, and the parties by their agreement have so interpreted it.

The appellant's position, therefore, that the delivery of the warehouse receipts was constructively a delivery of the wheat and a fulfillment of the contract on his part, is untenable.

We consider his position also untenable as to the "330 or 340 sacks hauled to the levee." He can not be heard to say now that that constituted a delivery, he having received the wheat back into his warehouse, and subsequently delivered it to the plaintiff under the contract; and whether it was a delivery or not is wholly immaterial, for it appears from the evidence that it has all been received and accounted for to him by the plaintiff.

The plaintiff cannot recover the expense of sending the barge to Ottawa. It may well be doubted whether that was either the natural or proximate consequence of the breach of the contract; if not it could not be recovered even if specially alleged.

It does not appear that it was in contemplation of the parties that the wheat should be shipped otherwise than by the regular line of boats on that river. But however that may be, the item is not recoverable as *general* damages, for it can not be presumed to have resulted from the breach ; it certainly is not the *necessary* result of it, nor is it recoverable as *special* damages, not having been alleged. If special damage is not particularly set up it cannot be recovered. *See* 2 *Green. Ev.*, 254–256 ; *Sedgwick on Dam.*, *Ch.* 3 ; 1 *Chitty's Pleadings*, 338–395.

For another reason this item was improperly allowed. It

Brackett v. Edgerton.

does not appear that the defendant was in fault for not shipping by the barge. It arrived at Ottawa, and the demand for the wheat was made on Sunday.

The demand on that day was illegal, and a nullity, and it would have been a violation of law for the defendant to have complied with it. Our statute provides that : " No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business or work, except only works of necessity and charity　　*　　*　　*　　* on the Lord's day, commonly called Sunday, and every person so offending shall be punished by fine," &c. The legislature intended to prohibit any secular business (not a work of necessity or charity,) on that day, and the demand made in this instance, as well as a compliance with it would manifestly fall within the prohibition. *Tucker vs. Mowry*, 12 *Mich.* 378 ; *Potter vs. Greely*, 13 *Met.*, 284.

It is argued that " the warehouseman, by declining to deliver, on the ground that the county treasurer held the wheat for a tax, waived all other grounds, and excused the making of any other demand." But it was not a matter that the warehouseman or defendant could validate. The law is not enforced for the benefit of either, but to prevent the desecration of the day. The demand was void—not merely voidable.

The warehouseman was the defendant's agent, for the purpose only of delivering the wheat, and it does not appear that he missed or neglected any opportunity to deliver it, except on Sunday, as aforesaid. His statement, that the wheat was seized by the county treasurer, does not prove that fact. Nor is there any evidence to show that he could not or would not have shipped on the day following.

It is argued by the appellant, that the evidence showing the number of bushels of wheat received at Minneapolis, did

Brackett v. Edgerton.

not tend to show the number delivered at Ottawa, and therefore should not have been received against his objection.

The plaintiff testifies on this point: "The wheat was weighed at our mills. I kept account of the sacks sent. All were returned, some with wheat and some without. There was no shortage until after I had received 3900 bushels, except 15 bushels; all the sacks that came after that were full." The plaintiff furnished the sacks, and it is not pretended that any of the wheat was delivered except in his sacks.. While this evidence may not be the most satisfactory, it certainly tended to establish the fact which it was offered to prove, and therefore was properly received.

The appellant also argues that Brackett's evidence was not admissible on the issue of the market value of wheat at Ottawa. He testified: "I received the wheat demanded at Ottawa from or about July 10th to July 15th. On the 17th August, 1865, 290 bushels and 20 pounds. I am a miller, was then, was in the habit of buying wheat in different places in the State in 1865." This question was then propounded to the witness: "Do you know what was the market value of wheat at Ottawa when you made the demand?" "Objected to on the ground that it did not appear that witness was acquainted with the wheat market at Ottawa." The objection was overruled and the defendant excepted to the ruling, and the witness answered: "I was acquainted with the price at that time. No. 1 was worth at Ottawa then $1.20 per bushel," &c. The question asked only called for the witness's knowledge of the price of wheat, and as this is a question on which it was competent for him to testify, the answer was properly received.

Whether it would have been competent for the witness to testify as to the price of wheat at Ottawa from his personal knowledge of the price at other places in the State, is

a question not raised by the objection of the defendant. The plaintiff when on the stand as a witness testified: " I knew the value of wheat of the different grades in Milwaukee in April, 1865. I was buying wheat at that time with reference to the Milwaukee market. Had correspondence and circulars on the subject. I was shipping flour to the Chicago market. We frequently exchanged wheat receipts for wheat in Milwaukee, for wheat here, parties paying the difference in transportation, insurance," &c. Witness was then asked: "What was the difference at that time of No. 1 and No. 2 wheat in Milwaukee ?" The ruling of the referee admitting the answer to the question is alleged as error, on the ground that the witness had not the requisite knowledge to enable him to testify. We are of the opinion that the referee was right in receiving the testimony.

The information which the witness acquired, by the means stated, was as full, accurate and reliable as could have been acquired in any other way. On such information business men rely, and act in their most important pecuniary matters. It appears from the evidence that the wheat was inspected in the plaintiff's mill, and that only that part was inspected which he was unwilling to receive as No. 1. He testified: "I think I took as No. 1 about 3600 bushels before Kelly was called on. I notified defendant that there was a quantity of wheat that I could not take as No. 1. This was in July, a few days before we saw Kelly in St. Paul. We then agreed upon Mr. Kelly to inspect the wheat at the mill. Kelly did inspect the wheat very soon after this."

The parties having agreed upon an inspector by whom the grade of any wheat was to be fixed which the plaintiff considered inferior to No. 1, and it having been left with the plaintiff to have it graded according to the contract, or

Brackett v. Edgerton.

to receive it as No. 1 at his option, he is bound by the contract, and can legally be allowed no deduction on wheat which he neglected to have thus inspected. The contract of the parties is, " that if any of said wheat *upon inspection by said Beaupre (Kelly)* should prove not to be No. 1. * * said Edgerton is to refund said Brackett the difference," &c. It was competent for the parties to settle by the contract the mode of inspection, and the conditions on which the plaintiff should be entitled to a deduction from the price, and having done so, the plaintiff cannot recover on a breach of the contract with which it appears he has not complied, or without the performance of an act which is made a condition precedent to a right to recover.

In allowing the deduction on the wheat not inspected, we think the referee erred. We think he also erred in the allowance of interest to the plaintiff from the date of the contract on the value of the wheat not delivered. While interest is allowed from the date of the contract, the value of the wheat is fixed at a much later date, and at a much higher price than it rated when the contract was made. The contract did not pass the title. It does not appear that the wheat sold was at the time of the sale separated or set apart. Indeed it appears on the contrary from the evidence that it was not, but that part of it was subsequently purchased.

There was therefore neither an actual nor a constructive delivery. The legal effect of the contract was that the defendant should deliver to the plaintiff the number of bushels of wheat of the grade specified, at Ottawa, on demand, within a reasonable time. Until such demand there was no default, and it is not proven that a legal demand was made any given length of time before the commencement of this action. The referee found " that the plaintiff made a de-

·mand before the commencement of this action." How long before does not appear. Before default defendant was not liable for damages, and as the interest is only allowable as ·damages, it could only commence to run after default. The allowance for extra freight is erroneous. It seems to be founded on the demand made on Sunday, which we hold gave the plaintiff no right. Except in failing to comply with that demand, it does not appear that the defendant was in default until he had delivered all the wheat which the plaintiff has received under the contract.

Judgment reversed.